UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| KEVIN J. COLLINS, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff | ) |  |
|  | ) |  |
| v. | ) | 1:12-cv-00069-GZS |
|  | ) |  |
| KENNEBEC COUNTY JAIL, *et al.*, | ) |  |
|  | ) |  |
| Defendants | ) |  |

**RECOMMENDED DECISION**

Kevin J. Collins, who has described himself as a pretrial detainee at the time of the incidents giving rise to his complaint,[1] commenced an action in the Maine Superior Court, Somerset County, on December 15, 2009. Approximately one month later Collins filed an amended complaint. The amended complaint asserts claims about a variety of jail conditions and lists as defendants Kennebec County Jail, the Sheriff, and three or four private contractors who provide contractual services to the jail. It does not appear that any docket activity occurred in the case until December 6, 2011, when Crisis and Counseling Centers, Inc. filed a motion to dismiss. (Doc. No. 5.) On December 12, 2011, Keefe Commissary, Inc. filed its own motion to dismiss. (Doc. No. 11.) That motion was followed on January 9, 2012, by two related motions to dismiss filed by ITI Inmate Telephone, Inc. and its contractual successor. (Doc. Nos. 7 & 8.) Collins responded on December 29, 2011, to the Crisis and Counseling Centers motion, and according to the docket entries from state court, filed additional opposing memoranda on January 18 and 27, 2012. On February 24, 2012, Sheriff Liberty and the Kennebec County Jail removed the case to this court. The earlier motions to dismiss, all filed in state court and listed above with docket

---

[1] It appears his status may have changed in the past two years because Collins's current address is the Maine State Prison in Warren, Maine.

entry numbers assigned by this court, have now been referred to me for a recommended decision pursuant to 28 U.S.C. § 636 (b). I now recommend that the Court grant these four pending motions to dismiss.

## Amended Complaint Allegations

The operative pleading in this case is the amended complaint filed on January 25, 2010.[2] (Doc. No. 2-4.) That document consists of thirty-four paragraphs containing a hodgepodge of citation to authorities and conclusory complaints about the Sheriff's policies at the Kennebec County Jail. Although in many paragraphs Collins refers to "listed defendants," those allegations pertain to jail policies that would not be subject to the control of contractual vendors. I have not included the allegations pertaining to jail policies regarding legal materials, copying costs, illegal liens on jail accounts, unequal treatment of inmates, and state violations pertaining to the Maine Freedom of Access Act, and the Rule 80C review of final agency action, as I deem those allegations to be directed at the Sheriff and his policies.

Pertinent to the four pending motions is the fact that Crisis and Counseling Centers, Inc. is only mentioned in paragraph 16, in which Collins alleges: "Listed defendants conspired with Crisis & Counseling Center, Inc. to charge plaintiff medical cost for stool prognosis and softener prescription."

The two Inmate Telephone Inc. defendants are mentioned in paragraphs 17 through 19. According to Collins, they wrongfully implemented "telecommunicative service that biasly deprived Plaintiff meaningful access to certain local telephone numbers." (Am. Compl. ¶ 17.) This deprivation occurred by means of "blocks" and prepaid plans. Included among the "blocked" numbers were local lawyers' offices. When inmates were able to place calls to their

---

[2] Collins filed an earlier amended complaint on January 22, 2010, but parts of that document are handwritten and disorganized. The first amended complaint appears to be in a "draft" format and I conclude that Collins intended to replace that document with his later amended complaint. I have proceeded accordingly.

2

lawyers, ITI allowed the jailers to "carelessly breach attorney/client privileged communication thru their system." (Id. ¶ 18.) Finally, ITI wrongfully imposed a $5.00 surcharge fee every month. (Id. ¶ 19.)

The allegations pertaining to Keefe Commissary, Inc. are found in paragraphs 20 through 25. Collins complains that the commissary imposed a penny charge on each first class stamp purchased. (Id. ¶ 20.) According to Collins, the commissary violated state law by placing its "KOAS" system in the jail lobby and then arbitrarily skimming $3.25 per initial transaction. (Id. ¶ 21.) Collins does not explain what this system was or what was obtained through the "initial transaction," but alleges that the state and county do not adequately monitor the KOAS system. (Id. ¶ 22.) Additionally, this defendant randomly increases the cost of canteen items well above local retail prices. (Id. ¶ 23.) Keefe instituted an "indigency clause" for a 30-day period before issuing Collins three mandatory free postal envelopes. (Id. ¶ 24.) Keefe also conspired with the Sheriff to keep the dayroom temperature below 65 degrees causing Collins to wear a "canteen purchased sweatshirt." (Id. ¶ 25.) Apparently Keefe is also implicated in a first amendment violation because Collins, a self-professed Muslim, was limited to a $20.00 Koran he could purchase through Keefe. (Id. ¶ 30.)

## MOTION TO DISMISS STANDARD

In deciding a motion to dismiss, the court accepts as true the factual allegations of the complaint, draws all reasonable inferences in favor of the plaintiff that are supported by the factual allegations, and determines whether the complaint, so read, sets forth a plausible basis for recovery. Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008). Additionally, because Collins is a *pro se* litigant, his complaint is subjected to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520

(1972). As a *pro se* litigant, his pleadings also may be interpreted in light of supplemental submissions, such as his responses to the motions to dismiss. Gray v. Poole, 275 F.3d 1113, 1115 (D.C. Cir. 2002); Wall v. Dion, 257 F. Supp. 2d 316, 318 (D. Me. 2003).

## DISCUSSION

*The Crisis and Counseling Centers, Inc.'s Motion to Dismiss (Doc. No. 5)*

The Crisis and Counseling Centers points out that the only allegation against it is that it "conspired" with other "listed" defendants to charge Collins a fee for a particular medical prognosis and prescription. Presumably the Center is a fee-for-service institution and would charge someone fees for its services, hardly a violation of any constitutional right. Collins attempts to explain in his response to the motion (Doc. No. 9) that his theory of the case is that the Center conspired with the food service provider to devise an inappropriate diet that resulted in his constipation and need for a stool softener. According to Collins, discovery will reveal all.

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. The only facts pled here are that Collins was fed a particular diet while he was an inmate at the county jail and the food was prepared by a private company. After eating that food, Collins became constipated, sought medical assistance from another private entity, and was charged a fee. There are no facts pled to suggest any relationship between the food service provider and the medical provider. This complaint is devoid of any factual content that would support the theory that The Crisis and Counseling Centers, Inc. conspired with anyone to cause Collins to develop constipation. The

allegations are not just implausible, they are incredible and the complaint should be dismissed as to this defendant.

***Inmate Telephone, Inc.'s Motions to Dismiss (Doc. Nos. 7, 8.)***

There are two essentially identical motions to dismiss directed at this portion of the complaint. The first version of the motion (Doc. No. 7) was filed by DSI ITI, LLC, the assignee under the telephone service contract in effect when Collins resided at the Kennebec County Jail. To the extent Collins's claims arose prior to an asset purchase agreement executed on or about June 15, 2010, DSI cannot respond to the allegations and for that reason ITI has filed its own motion to dismiss (Doc. No. 8) echoing the arguments raised in the first motion. The ITI defendants maintain that there is no federal constitutional or statutory right to unrestricted access to certain phone numbers and that jail officials are given wide latitude in managing prisons and, thus, Collins's complaint fails to state a claim in this respect. Furthermore, these defendants argue that if jailers somehow breached the system in order to overhear attorney/client privileged communications, there is no sixth amendment claim against ITI arising from that fact. Finally, these defendants argue that the complaint does not state a claim for a monopoly in restraint of trade. I agree with their assessment.

As a prisoner Collins does not have an unfettered right to use a prison phone on his own terms. A prisoner's right to telephone access is subject to rational limitations in the face of the prison's legitimate security interests. Washington v. Reno, 35 F.3d 1093, 1100 (6th Cir. 1994). The First Circuit has recognized that an institution may require the inmate to consent to monitoring as a condition of telephone usage in the prison, Gilday v. Dubois, 124 F.3d 277, 293 (1st Cir. 1997), and has further determined that monitoring phone calls between a prisoner and his lawyer does not amount to a fourth amendment violation if one party consents to the

5

monitoring, United States v. Novak, 531 F.3d 99, 101 (1st Cir. 2008). Unfortunately for Collins, his complaint does not provide any details regarding the monitoring/blocking system that he claims violated his constitutional rights and as a general principle the fact that a prison telephone system blocks or monitors certain calls and imposes a $5.00 per month surcharge on a prisoner does not state a claim for a constitutional violation. Johnson v. California, 207 F.3d 650, 656 (9th Cir. 2000) (holding that imposition of increased rates for phone usage by prisoners does not violate the First Amendment), rev'd on other grounds, 543 U.S. 499 (2005).

Collins does claim that his sixth amendment right to counsel was violated by the blocking system and by the fact that the system allowed jailers to "breach" attorney/client privileged communication. If a jailer "breached" a conversation between Collins and his attorney, Collins would have needed to provide factual content to the allegation. The fact that a jailer did so might indeed amount to a sixth amendment violation by the jailer. The fact that Collins says the system allowed the jailer to do that because it was carelessly designed does not state a constitutional claim against ITI. Whatever the limitations of the telephone system in terms of confidential communications with counsel, Collins could still communicate in person or through the mail with his attorney. To the extent those methods of communication were compromised at the jail, the claim does not lie against ITI.

Finally, Collins suggests that ITI "created a deceptive monopoly." This claim is simply undeveloped in his pleadings and does not state a claim for anti-trust violations under either state or federal laws.

***Keefe Commissary Inc.'s Motion to Dismiss (Doc. No. 11)***

Collins's claims against this particular defendant are more extensive than his claims against the other two private entities that provide contractual services to the Kennebec County

6

Jail. Some of his plaints fall into the general category of complaints about pricing and services provided by Keefe. On this score I have in mind his complaints about a penny fee charged to purchase stamps, placement of the Kiosk Deposit System in the jail's lobby, a policy which limits ordering of certain supplies such as postage and writing material to one day per week, a policy which requires verification of amounts on deposit in prisoner accounts prior to completing transactions, and the retail prices of goods, including the price charged for a Koran. I view these various allegations by Collins as being nothing more than his view that Keefe charges excessive prices and provides inadequate service, an opinion he is free to hold, but not a legally actionable claim in the context of a complaint regarding prison conditions. There is no legal authority for the proposition that inmates must be offered items at a particular price.

Collins fails to cite a provision of the United States Constitution as the basis for his claims and, indeed, his complaint simply does not state a claim of constitutional magnitude. See French v. Butterworth, 614 F.2d 23, 25 (1st Cir. 1980) ("We also reject French's contention that he and fellow inmates have a constitutionally protected interest in buying food as cheaply as possible. Although the wide support for French's proposal is understandable, there is simply no legal basis for a demand that inmates be offered items for purchase at or near cost."); see also Thompson v. Gibson, 289 F.3d 1218, 1222 (10th Cir. 2002) ("[T]here is no constitutional right to purchase food from the canteen."); Tokar v. Armontrout, 97 F.3d 1078, 1083 (8th Cir. 1996) ("[W]e note that we know of no constitutional right of access to a prison gift or snack shop."); Mitchell v. Liberty, 1:08-cv-00341-JAW, 2008 WL 5216291, *2 (D. Me. Dec. 11, 2008); Rodriguez v. Swanson Servs. Corp., Civ. No. 01-117-P-C, 2001 WL 506871, *1 (D. Me. May 11, 2001) (collecting district court cases). Additionally, there is precedent supporting Keefe's scheme of charging for postage stamps. McCall v. Keefe Supply Co., 71 Fed. Appx. 779, 2003

WL 21716435 *1 (10th Cir. 2003) ("We reject [plaintiff's] contention that he has a constitutionally protected interest in buying stamps as cheaply as possible"); Hardin v. Johnson, No. 1:08CV036-A-D, 2008 WL 906489, *4 (N.D. Miss. April 1, 2008).

Collins's second category of complaints against Keefe relates to what I will term the denial of access to legal materials. In the first place, providing access to legal materials and providing a reasonable means for a prisoner to contact the courts and counsel through the provision of writing materials and free postage is the Sheriff's primary obligation, not the obligation of the private, for-profit company that has a contract with the jail. 30-A M.R.S. § 1501 (assigning the sheriff "custody and charge of the county jail and of all prisoners in that jail"); Bounds v. Smith, 430 U.S. 817, 828 (1977). However, it is possible that the contract which allows Keefe to operate at the County Jail contains a provision whereby the Sheriff has contractually obligated Keefe to provide free postage to indigent defendants by furnishing them three stamped envelopes per month. If Keefe has contractually assumed that obligation, as Collins seems to suggest in his complaint, then the claim found in paragraph 24 of the amended complaint—suggesting that an indigent inmate is required by Keefe to wait 30 days before he can obtain access to what Collins alleges are "mandatory" free postal envelopes—could plausibly state a claim for denial of access to the courts. However, Collins's complaint seeks monetary damages, not injunctive relief[3] and his complaint has not pled the sort of factual content that would support a claim for denial of court access. See Lewis v. Casey, 518 U.S. 343, 351 (1996) (explaining that an inmate must demonstrate that the alleged conduct pertaining to access to the courts hindered his own efforts to pursue a legal claim in some concrete fashion). I

---

[3] Indeed, Collins is no longer at the Kennebec County Jail and would not have standing to pursue a claim for injunctive relief regarding these policies if he had requested such relief in his amended complaint. A transfer to a different facility renders claims for declaratory or injunctive relief moot. Shaheed-Muhammad v. Depaolo, 138 F. Supp. 2d 99, 101 (D. Mass. 2001). It is academic in any event because Collins has not requested such relief.

put Collins's claim regarding the $3.25 transaction fee into this same category. It could be viewed as an unreasonable regulation that puts an unnecessary burden on a litigant's access to the courts,[4] but there is no factual content in the complaint that suggests that Collins was impacted by this policy. As to these two issues, "mandatory" free postage and an unreasonable transaction fee on deposits to inmate accounts, Collins has failed to provide sufficient factual content that would support a claim for money damages.

The third category of claims pled by Collins involves totally conclusory claims devoid of any factual content. Here I am referring to his assertion of a conspiracy between Keefe and county officials to turn the heat down to 65 degrees so that Collins would have to buy a sweatshirt in the commissary and the allegations relating to Keefe paying kickbacks to county officials on the commissary sales. I say these claims of a conspiracy between Keefe and the county are conclusory not because such a scenario is impossible to imagine, but because the only factual content relates to the "heating conspiracy," a totally implausible allegation. There is no basis in the complaint upon which to base an inference that Keefe controls or conspires with others to control the heating of the common rooms in the jail. In the absence of such nonconclusory factual allegations the responsibility for jail maintenance and control is that of the Sheriff under Maine law and Keefe has no legal responsibility for the temperature at which the Sheriff sets the thermostats.

## CONCLUSION

Based upon the foregoing, I recommend that the Court grant the pending motions to dismiss.

---

[4] For instance, this court charges state prisoners a $5.00 filing fee to file a habeas corpus petition if they are not indigent. A prisoner who had been ordered to pay the fee, but could not do so because of the deduction referenced in the complaint might be in a situation where he could at least argue that the fee had created an impediment to his access to the courts.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

March 21, 2012                         /s/ Margaret J. Kravchuk
                                        U.S. Magistrate Judge