UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| KEVIN J. COLLLINS, | ) |
| | ) |
|     Plaintiff | ) |
| | ) |
| v. | ) 1:12-cv-00069-GZS |
| | ) |
| KENNEBEC COUNTY JAIL, | ) |
| | ) |
|     Defendant | ) |

## RECOMMENDED DECISION

Kevin Collins sued a group of private contractors who provide services to the Kennebec County Jail and he also sued Sheriff Randall Liberty and Kennebec County Jail. His allegations relate to a variety of jail conditions at the Kennebec County Jail while Collins was incarcerated there as a pretrial detainee. Collins originally filed suit on December 15, 2009, in state court and the case remained there until February 24, 2012, when Sheriff Liberty and Kennebec County removed the matter to this court. At the time of removal the co-defendants all had fully briefed motions to dismiss pending in the state court. I have recommended, and the District Court Judge has affirmed my recommendation, that those co-defendants be dismissed from the action. The only motions that remain pending in this Court are Collins's motion to remand (ECF No. 19) and the county defendants' motion to dismiss (ECF No. 16). I now recommend that the Court deny the motion to remand and grant the motion to dismiss.

### PLAINTIFF'S MOTION TO REMAND

Collins's motion to remand is based on two major contentions: (1) that service was made on the Kennebec defendants on November 28, 2011, and the removal to this Court was not effected in a timely manner, within 30 days of the date of service and (2) that defendants' counsel did not provide documentation from the other defendants to establish their consent to the

removal pursuant to 28 U.S.C. § 1441(b)(2)(A).[1]  Both of plaintiff's arguments fail and the motion to remand should be denied.

The County defendants plainly state in the notice of removal (ECF No.1) that prior to removal they obtained the consent of all of the defendants who had appeared in the state court action.  Clearly the better practice would have been to have all the defendants who had appeared in the state court either sign the notice of removal or file an immediate notice of consent to removal.  Esposito v. Home Depot U.S.A., Inc., 590 F. 72, 76 (1st Cir. 2009).  Nevertheless, in this case, where all the defendants have filed objections to the plaintiff's motion to remand (see ECF Nos. 22-24), adhering to a "wooden rule" that would not serve the purposes of the unanimity requirement would be an example of placing "form over function." Id. at 77.  However, counsel would be well advised to adhere to the strictures of the rule regarding unanimity to avoid unnecessary problems, especially in a case like this one where the removing defendants are relying upon defects in service in order to render the removal timely.

Collins's second basis for remand is a more serious concern and depends upon whether or not he is correct that Randall Liberty received notice of the lawsuit when Jim Saucier signed a certified mail receipt for an envelope on November 28, 2011, that Collins claims contained a copy of the amended civil rights complaint and state court summons.  (See ECF Nos. 19-1 & 19-3).  Collins's certificate of service recites an oath rather than an affirmation under penalty of perjury, but his "oath" is actually not a properly attested document.  However, it is apparent that he mailed something to Randall Liberty on November 28, 2011, someone at the Kennebec

---

[1] Collins also attempts to refute a claim that his damages are not "serious" and thus do not warrant federal court consideration.  This merits-based argument has nothing to do with a motion to remand because both the state and the federal courts employ the same constitutional and statutory standards.  Likewise, his argument that he is entitled to a Somerset County jury and the "less stringent state civil rights standards" has no applicability to a claim that his federal civil rights have been violated.

County Jail signed for it, and Liberty became aware of the lawsuit at some point in time because, on February 24, 2012, the matter was removed to this Court.

The relevant statutory provision, 28 U.S. § 1446(b), requires that a notice of removal be filed within 30 days after "receipt by the defendant, through service or otherwise, of a copy of the initial pleading." The time limit is intended to serve two purposes: (1) it forecloses a defendant from adopting a "wait and see" approach in the state court and (2) it "minimizes the delay and waste of resources involved in starting a case over in federal court after substantial proceedings have taken place in the state court." Gorman v. Abbott Labs., 629 F. Supp. 1196, 1199 (D. R.I. 1986) (Selya, J.). Neither of those concerns is implicated by the notice of removal in this case because the state court had taken no substantive action as to Sheriff Liberty or any of the other defendants at the time of removal. On the other hand, the statutory provision provides that "receipt" of the pleading is sufficient. Courts are split over whether the thirty-day period begins upon proper service or upon receipt of the complaint. New World Techs., Inc. v. Comy Tech., Inc., 876 F. Supp. 6, 8 (D. Mass. 1995).

Collins's statement that service was made on November 28, 2011, is inaccurate under the Maine Rules of Civil Procedure. Per Rule 4, "[s]ervice of the summons and complaint may be made as follows:"

> (1) By mailing a copy of the summons and of the complaint (by first-class mail, postage prepaid) to the person to be served, together with two copies of a notice and acknowledgment form and a return envelope, postage prepaid, addressed to the sender. If no acknowledgment of service under this paragraph is received by the sender within 20 days after the date of mailing, service of the summons and complaint shall be made under paragraph (2) or (3) of this subdivision.
> (2) By a sheriff or a deputy within the sheriff's county, or other person authorized by law, or by some person specially appointed by the court for that purpose. Special appointments to serve process shall be made freely when substantial savings in travel fees will result.
> (3) By any other method permitted or required by this rule or by statute.

Me. R. Civ. P. 4(c).

While Collins has attached proof that he mailed the complaint and summons to Sheriff Liberty and that this mail was received by someone at the jail, there is no proof that any acknowledgment of service was returned to Collins or that a sheriff or deputy made service upon the Sheriff or the Kennebec County Jail.

Even if this Court were inclined to adopt the view that the thirty days began to run upon Liberty's actual receipt of a copy of the complaint, in the absence of formal service, there is no way for this court to determine when receipt occurred. This case is unlike those cases in which attorneys or other clearly authorized agents received notice of the complaint even though a summons was not properly served or an acknowledgement obtained. The mail may have sat unopened for days or weeks before it was delivered to the Sheriff or his counsel. The record in this case is silent on the question of actual receipt by the defendant or his *authorized* agents such as his attorney and therefore this Court is unable to say that the removal was untimely in the absence of a date for actual service. Because there is insufficient evidence that proper service was ever made and no evidence as to precisely when Liberty or an authorized agent received notice of the complaint, I conclude that the removal was timely and I would recommend denying the remand.

## THE MOTION TO DISMISS

Collins's amended complaint (ECF No. 2-3) contains a litany of complaints about the Kennebec County Jail, alleging violations of his civil rights under both the Maine[2] and United

---

[2] I do not discuss separately the Maine constitutional claims, presumably brought pursuant to the Maine Civil Rights Act, because Collins has not made any argument that any different standards would apply. See Jackson v. Town of Waldoboro, 751 F. Supp. 2d 263, 275 (D. Me. 2010) ("The MCRA, which provides a general remedy for violations of federal and state constitutional and statutory rights, is 'patterned' after Section 1983. As such, disposition of a claim under Section 1983 controls a claim brought under MCRA.") (citation omitted); Nillson-Borrill v. Burnheimer, 505 F. Supp. 2d 180, 183 (D. Me. 2007) ("Despite the significant difference in wording between the MCRA and section 1983 . . . courts routinely combine section 1983 analysis with MCRA analysis");

States Constitutions. (Am. Compl. ¶ 1, § II.) He also claims that his action is brought pursuant to Rule 80C of the Maine Rules of Civil Procedure (id., § III), but Rule 80C is a state rule designed for the review of final agency action under the Maine Administrative Procedure Act, 5 M.R.S. §§ 1101 et seq. There are absolutely no allegations that any state administrative agency made any final decision in this matter or that any state agency ever reviewed any action taken by Kennebec County officials in this case. It is simply not a Rule 80C appeal. Rather, the amended complaint consists of a series of complaints about policies, practices, or activities at the Kennebec County Jail which Collins advises are not in "compliance with random state statutes and '2005 Jail Standards' manual." (Id., § II.) Collins also complains that the use of restraint cells in segregation areas of the jail violated the Eighth Amendment of the United States Constitution. He also claims constitutional violations related to limiting access to legal materials (Id., ¶ 9, § II), destruction of incoming envelopes (¶ 10), retaliatory transfer from the facility (¶¶ 11, 13), denial of equal protection based on his Muslim religion (¶ 12), and loss of personal items (¶ 14).

**A.     Dismissal Standard**

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint can be dismissed for "failure to state a claim upon which relief can be granted." In deciding a motion to dismiss, the court accepts as true the factual allegations of the complaint, draws all reasonable inferences in favor of the plaintiff that are supported by the factual allegations, and determines whether the complaint, so read, sets forth a plausible basis for recovery. Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008). To properly allege a claim in federal court, it

---

Forbis v. Portland, 270 F. Supp. 2d 57, 61 (D. Me. 2003) ("The disposition of the federal claim controls the plaintiff's claim under the Maine Civil Rights Act, 5 M.R.S.A. § 4682, because the latter is patterned on 42 U.S.C. § 1983.").

is not enough merely to allege that a defendant acted unlawfully; a plaintiff must affirmatively plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Additionally, because Collins is a pro se litigant, his complaint is subjected to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972).

### B. Sheriff Liberty is the Only Remaining Defendant

As an initial matter, I must attempt to ascertain exactly who Collins is suing and for what. In addition to the private vendors who have previously been dismissed from the lawsuit, the only named defendants are the sheriff and the Kennebec County Jail. Sheriff Randall Liberty is mentioned two times in the amended complaint. In paragraph 34 Collins states in conclusory fashion that the Sheriff conspired with the vendors to recklessly spend canteen and telephone profits in a biased manner on female prisoners and male trustees, rather than on him. According to the allegations in paragraph 26, on two occasions Liberty failed to provide documents to Collins that Collins sought under the Maine Freedom of Access Act, 1 M.R.S. §§ 401-409. Other conclusory allegations are directed at "listed defendants," which in addition to Liberty are described as "Kennebec County Jail, et al." The Kennebec County Jail is not a governmental entity or a proper party defendant to this lawsuit. It is a building. The sheriff has the custody and charge of the county jail and of all of its prisoners pursuant to 30-A M.R.S. § 1501. Thus, I will assume for purposes of this analysis that Randall Liberty is being sued in both his official capacity, as the person responsible for the county jail, and in his individual capacity, as the supervisor of those who are employed at the jail.

### C. Individual Capacity Claims Against Sheriff Liberty

Sheriff Liberty's personal involvement in these allegations (most of which are directed at the "policies and customs" of the jail administration) appears limited to an alleged conspiracy with the "vender defendants" as set forth in paragraph 34, regarding the reckless spending of canteen and telephone profits. Collins describes this conspiracy as infringing a "liberty interest" that Collins claims he maintains in the use of funds by the Sheriff and the "vender defendants." As I explained in my prior recommendation concerning claims against the private individuals who contracted with the jail, Collins does not have an interest of constitutional dimension regarding the pricing and sale of items in the prison canteen. Nor does he have unfettered rights regarding the exercise of phone privileges. That the Sheriff has chosen, in conspiracy with others or not, to use the proceeds of canteen and telephone profits to purchase recreational items for other inmates that Collins has been unable to personally use does not state a constitutional claim against the Sheriff. This claim should be dismissed.

The only remaining avenue for an individual capacity claim against Sheriff Liberty would be in his role as supervisor because the complaint does not allege any direct involvement by Sheriff Liberty with Collins. The First Circuit has observed that it is "axiomatic that the doctrine of respondeat superior does not apply to claims under section 1983." Gaudreault v. Salem, 923 F.2d 203, 209 (1st Cir. 1990). Mere knowledge of a subordinate's wrongful conduct cannot establish section 1983 liability for a supervisor. Rather, there must be an affirmative link between the conduct of the supervisor and the constitutional deprivation experienced by the plaintiff. See Sanchez v. Pereira-Castillo, 590 F.3d. 31, 49 (1st Cir. 2009); Maldonado v. Fontanes, 568 F.3d 263, 274-75 (1st Cir. 2009); Whitfield v. Melendez-Rivera, 431 F.3d 1, 14

(1st Cir. 2005). Examples of affirmative links include "supervisory encouragement, condonation or acquiescence" in relation to the deprivation. Maldonado, 568 F.3d at 275 (quoting Pineda v. Toomey, 533 F.3d 50, 54 (1st Cir. 2008)). Deliberate indifference can also result in supervisory liability. Id. Ultimately, Collins does not allege facts that would support a plausible inference that Sheriff Liberty encouraged, condoned, or gave his acquiescence to any constitutional deprivation experienced by Collins. Collins alleges that he experienced a period of inhumane confinement, discussed further below, but his allegations do not supply any factual basis to infer that Sheriff Liberty knew of, let alone condoned, such treatment. Collins also alleges that a Lieutenant Alexander should have recused herself from participating in a disciplinary hearing, but these allegations do not support a plausible inference that either Lt. Alexander violated any constitutional right or that Sheriff Liberty condoned or approved her role in the disciplinary hearing in any event. In other words, the complaint does not contain a single allegation that would support a claim of personal supervisory liability against Sheriff Liberty. In the absence of facts suggesting direct personal involvement or supervisory involvement, all claims asserted against Sheriff Liberty in his personal capacity should be dismissed.

**D.      Official Capacity Claims**

The majority of Collins's amended complaint appears to be an official capacity claim against the Sheriff as the official responsible for policy and customs at the Kennebec County Jail. Collins complains, in conclusory fashion, about the following policies and/or events: (1) convening "vindictive" disciplinary boards involving him; (2) limiting his access to legal materials; (3) enforcing a policy of destroying incoming envelopes involving prisoner mail; (4) transferring Collins to other facilities for retaliatory purposes; (5) denying him equal access to religious materials because of his Muslim faith; (6) unknown individuals losing or stealing

8

various items of personal property; and (7) placing him in restraints and isolation cells where he received inhumane treatment and was deprived of the basic necessities such as water and bedding.

Collins's complaint about the "vindictive" disciplinary board goes nowhere because he provides no factual content as to why the boards were convened and what punishment was inflicted other than a "transfer to another facility to serve punitive sanctions imposed." (Am. Compl., PageID# 19, ¶ 4, ECF No. 2-3.) Imposing disciplinary sanctions on a pretrial detainee is not necessarily a violation of a constitutional right. Collazo-Leon v. U. S. Bureau of Prisons, 51 F.3d 315, 316 (1st Cir. 1995). Collins does not have a right not to be transferred to a different jail. See Meachum v. Fano, 427 U.S. 215 (1976). In Maine, an inmate, pre-trial or sentenced, may be transferred from one county jail to another without any articulated reason. 34-A M.R.S.A. § 1405(1). Although Collins alleges he was transferred in retaliation, he makes no allegation that the transfer was in retaliation for constitutionally protected activity.[3] See McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979). Nor has he alleged that being incarcerated at the Somerset County Jail is an adverse action as opposed to remaining in the Kennebec County Jail. Finally, Collins complains about a jail policy that results in the destruction of incoming envelopes in contravention of 34-A M.R.S. § 1208,[4] but offers no explanation of how he was possibly harmed by this claimed violation of official policy. If individual officers violated the official policy of the institution, it is not a basis for holding the governmental entity liable.

---

[3] I have explained in my prior recommendation why Collins's complaints regarding his diet, his telephone usage, and the postage stamp policy do not rise to the level of constitutionally protected activity. Likewise, I have fully discussed and the Court has accepted my recommendation dismissing the claims involving discrimination related to the price of a Koran and the claims involving access to legal materials. The allegations against Sheriff Liberty on these issues fare no better than did the allegations against the private vendors because Collins provides no additional factual content involving the Sheriff's official capacity involvement in these alleged deprivations.

[4] Section 1208 merely authorizes the Commissioner to establish standards for county jails. The statute has nothing to do with policies regarding envelopes and Collins does not reference the applicable regulation he has in mind.

As for the official capacity claims against Sheriff Liberty: "A suit against a public official in his official capacity is a suit against the governmental entity itself." Surprenant v. Rivas, 424 F.3d 5, 19 (1st Cir. 2005). Thus, a suit against Sheriff Liberty is the same as a suit against Kennebec County, which operates the jail. Kennebec County may only be held liable under Section 1983 for its own unconstitutional action. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). Accordingly, a municipal government will only be held liable when the "execution of [the municipal] government's policy or custom . . . inflicts the injury." Id. at 694. See also City of Canton v. Harris, 489 U.S. 378, 388 (1989); DiRico v. City of Quincy, 404 F.3d 464, 468-69 (1st Cir. 2005).

Collins also alleges, again in conclusory fashion, that "defendants" lost or stole personal items from him. If these items were lost, as a result of the negligent acts of these "defendants," Collins cannot recover pursuant to 42 U.S.C. § 1983 because negligence by a prison official is not actionable under the due process clause. Daniels v. Williams, 474 U.S. 327, 329-31 (1986); Lowe v. Scott, 959 F.2d 323, 340 (1st Cir. 1992). If there was factual content indicating that identifiable property was stolen, Collins has a post-deprivation remedy under state law for conversion of his personal property by the state employee involved in the theft. Hudson v. Palmer, 468 U.S. 517, 533 (1984). A theft by a jail employee does not amount to a constitutional violation by the Sheriff in either his personal or official capacity.

Finally, Collins alleges that he was held in an isolation-type cell for five days under inhumane conditions, deprived of life's basic necessities such as drinking water and bedding. This claim has two required components. First, Collins must establish that a "sufficiently serious" deprivation has occurred. Wilson v. Seiter, 501 U.S. 294, 298 (1991). Where, as here, an inmate challenges certain conditions of his confinement, "only those deprivations denying

10

'the minimal civilized measure of life's necessities' are sufficiently grave" to form the basis for an Eighth Amendment violation. Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). Second, the inmates must establish that defendants acted with a sufficiently culpable state of mind. Conditions-of-confinement cases require "deliberate indifference," Wilson, 501 U.S. at 303, which the Supreme Court has defined as knowing disregard of an excessive risk to inmate health and safety, Farmer v. Brennan, 511 U.S. 825, 837 (1994).

The allegations that Collins was placed in an isolation cell under inhumane conditions for a five-day period without drinking water and bedding, unable to flush human waste from the cell, would normally satisfy the first prong of this violation. What Collins's complaint lacks is any factual allegations that either Sheriff Liberty, personally, or the governmental entity, officially, knew of the conditions, condoned the conditions, or were otherwise deliberately indifferent to the allegedly inhumane conditions of confinement. To hold the governmental entity liable, as explained above, Collins would have to allege facts sufficient to support a plausible inference that Kennebec County has a policy or custom of housing inmates in these types of inhumane conditions. Given the lack of factual background about the circumstances of Collins's incarceration in the isolation cell, the complaint does not state a municipal policy claim against the Sheriff or Kennebec County because it offers no facts upon which to base a plausible inference, assuming the allegations are true, that this treatment came at the hands of anyone other than a rogue jailer acting outside of the policies and procedures of the institution. This claim should be dismissed as well.

E.   **Maine Freedom of Access Request**

Collins's claim under the Maine Freedom of Access statute seeks written materials regarding the 2008 and 2009 telephone and canteen profits. The current claim is tucked into

paragraph 26 of the amended complaint and none of the present defendants, including Sheriff Liberty, have addressed it in their motions to dismiss. Collins says that he attached grievance number 1283 "to substantiate public information being sought." (ECF No. 2-3 at ¶ 26.) However, I am unable to locate this document anywhere on the docket. If Collins was refused the right to inspect or copy a public record, he could theoretically bring an action under 1 M.R.S. § 409 (1). This is purely a matter of state law and does not necessarily implicate any federal rights. However, the state statute is clear that certain events must occur. First, if Collins obtains a written denial from the agency or official who has custody or control of the public record, he must within five working days from the receipt of the denial file his action in the Superior Court. The complaint as currently pled says that he submitted a written request on December 1, 2009, and January 13, 2010, but he does not indicate what that request consisted of or whether he ever received a written denial. If a written demand was submitted, under Maine law the claimant can bring a court action if the agency ignores his request, even in the absence of a written denial. Cook v. Lisbon Sch. Comm., 682 A.2d 672 (Me. 1996).

      Where the district court has dismissed all claims over which it has original jurisdiction, the court has discretion to decline to exercise supplemental jurisdiction over a state law claim, 28 U.S.C. § 1367(c), but it must reassess its jurisdiction by "engaging in a pragmatic and case-specific evaluation of a variety of considerations that may bear on the issue." Camelio v. American Fed'n, 137 F.3d 666, 672 (1st Cir. 1998). These considerations include "the interests of fairness, judicial economy, convenience, and comity." Id. Plaintiff wishes to litigate the state law claims in state court and Defendant has declined even to acknowledge the FOA request in the complaint. The First Circuit has stated that "needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for

them a surer-footed reading of applicable law." Camelio, 137 F.3d at 672 (citing United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). If the Court accepts the recommendation to dismiss the constitutional claims against Sheriff Liberty and/or Kennebec County, it should remand the state FOA claim to the state court.

## CONCLUSION

Based upon the foregoing, I recommend that the Court deny the motion to remand as requested by Collins and grant the Sheriff's motion to dismiss. I further recommend that the Court remand the sole remaining state law claim under the Maine Freedom of Access statute and the claim against Aramak, Inc., which entity has never been properly served and has never appeared or responded to the complaint in any fashion. Since Collins apparently wants to pursue his claim in state court, it should be remanded there for him to do so.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

May 31, 2012                         /s/ Margaret J. Kravchuk
                                     U.S. Magistrate Judge